MABEL AREY LUDLAM, Respondent, *v.* HENRY LUDLAM and
CONNECTICUT TRUST AND SAFE DEPOSIT COMPANY OF
HARTFORD, CONNECTICUT, Respondents, Impleaded with
HENRY AREY LUDLAM and Others, Appellants.

First Department, December 17, 1920.

Trusts — action by grantor to set aside trust deed on ground that
she believed same to be revocable when she executed it — evidence
that grantor executed deed with knowledge that it was irrevocable
— clear and convincing proof required.

In an action by the grantor of a trust deed to have it set aside and the trust
property returned to her on the ground that, while the deed did not
contain a provision for revocation, she understood that it could be
revoked at the end of three years, *held*, on all the evidence, that the trust
deed was executed by the plaintiff with full knowledge on her part that
the trust therein created was irrevocable and with full understanding
of its force and effect.

A trust which preserves the income of the property to the grantor for life
and the corpus of the estate to her husband and children should not be set
aside, except upon clear proof of the grantor's misunderstanding of the
nature of the paper executed.

In the instant case this rule is particularly applicable since it appears
that the grantor has during the eleven years since the date of the
execution of the trust deed, dissipated substantially all the rest of her
fortune.

APPEAL by the defendants, Henry Arey Ludlam and others,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York
on the 20th day of May, 1919, upon the decision of the court
rendered after a trial at the New York Special Term vacating
and setting aside a trust deed and returning the trust property
to the grantor.

*Walter R. Herrick*, guardian ad litem, for the appellants
Henry A. Ludlam and others.

*Otto C. Wierum* of counsel [*Spencer, Ordway & Wierum,*
attorneys], for the appellants J. H. Channon and others.

*Thomas M. Day,* for the respondent Connecticut Trust and Safe Deposit Company. °

*Hector M. Hitchings,* for the plaintiff, respondent.

SMITH, J.:

The plaintiff's father died in 1887, leaving a will which purported to convey personal and real estate. The plaintiff was then three years of age. Her mother at her father's death had two living children of a former marriage, one of which children was Leigh Arey, who was subsequently married to James H. Channon, defendant, and by whom she had two children, Katherine Channon and Elizabeth Channon, defendants in this action. The plaintiff, thereafter, resided with her mother and with the said James H. Channon and his wife until she was eighteen years of age. Her mother had died in 1897. After her mother's death James H. Channon was appointed guardian of the plaintiff's estate while his wife was appointed guardian of the plaintiff's person. James H. Channon thereupon became possessed of assets belonging to the plaintiff's estate of a value in excess of $300,000. She knew little, if anything, about the details of her property. When she became of age she became interested in one Henry Ludlam, who was much her senior in age, and she proposed to marry him. This marriage was opposed by Channon and his wife, but she persisted and was thereafter married to him. On April 6, 1906, the day preceding her marriage, she signed a trust deed of property aggregating in value about $120,000 to the United Security Life Insurance and Trust Company of Pennsylvania. The trust thereby created in general was a trust to invest the property and pay the income therefrom to her for life, and at her death to her appointee by will, and in case she should die without leaving a will that her husband might take such part of the property as she would be entitled to take in his property if he died intestate, and the residue of the property was passed to the child or children of the grantor who should be living at the time of her death. There was a final contingent provision for the benefit of Channon's daughters. This trust deed contained the following provision: "The said Grantor shall have the right to change the Trustee

at any time after three years from the date hereof, if she so
desires, and said Trustee will immediately upon request, under
the hand and seal of the Grantor, file its account and turn
over the estate to such other Trustee (being a Corporation) as
shall be named by the said Grantor, by writing under her
hand and seal." Thereafter, and on the 30th day of August,
1915, under this clause in the trust deed, the plaintiff assumed
to revoke the designation of the United Security Life Insurance
and Trust Company of Pennsylvania as trustee, and designated
instead the Connecticut Trust and Safe Deposit Company
of Hartford, Conn. The trust property was transferred to
said Connecticut Trust Company, which assumed the duties
of trustee under the said deed of trust. It is this deed of
trust which the judgment appealed from has vacated upon the
ground that the plaintiff did not comprehend that the paper
she was executing was not revocable, but that she was informed
and believed that the deed contained a power to revoke the
trust at any time three years after the execution of the same.
The power to revoke a trust deed upon proof of such fact
would seem to be recognized in the case of *Conkling* v. *Davies*
(14 Abb. N. C. 499). A trust of this nature, however, which
preserved the income of the property for life to the trustor
and the corpus of the property to her husband and children
should not be revoked, except upon clear proof of the trustor's
misunderstanding of the nature of the paper executed, especially
where it is shown that the trustor has during eleven years
from the date of the execution of the trust deed, until the
commencement of this action, dissipated substantially all the
rest of her fortune. except what she may be able to obtain in
an accounting of Channon, her former guardian. It becomes
necessary, therefore, to examine with care the evidence in this
case in connection with the probable inferences therefrom in
order to determine whether the judgment revoking this trust
deed rests upon sufficient proof. In examining this evidence
we must bear in mind that the trial judge had before him the
plaintiff herself, upon whose intelligence he could pass personal
judgment. The evidence, however, of the lawyer, Wilkinson,
who drew this trust deed, was taken by deposition, so that
the trial judge did not have the benefit of hearing him testify
and of founding his judgment in any way upon the impression

he derived from his appearance upon the stand. There is much in evidence as to the defendant James H. Channon who was the guardian of the plaintiff and her brother-in-law. There is much proof as to the business conduct of the plaintiff's estate by him, and there is proof of a decree in the courts of Illinois setting aside certain releases which had been executed by this plaintiff to him, releasing him from any further liability for the conduct of her estate as her guardian. The only relevancy of this evidence as I view it is as bearing upon the credibility of the evidence of Channon as to the circumstances surrounding the execution of this trust deed, and this evidence is to my mind a small factor in reaching our determination as to where the truth lies of the plaintiff's understanding of the nature of the deed she was executing. If the case had been tried by a jury, the introduction of all this evidence would in my mind be held so prejudicial as to compel a new trial. With a trial before the court, however, accustomed to weigh evidence and determine its relevancy within the rules of law, no legal harm could have resulted from the introduction of the evidence and the defendant would not be entitled to a new trial by reason of that fact. The decree of the Illinois court has no effect whatever in this action. It could in any event affect only the defendant James H. Channon, and I have been at a loss to know why he was ever made a party to this action, as he makes no claim whatever under this trust deed. This action is defended by the children of James H. Channon, who are ultimate beneficiaries in case of the death of the plaintiff without will and without leaving a husband or children, and by the guardian of plaintiff's children, who appeals for the protection of the court in saving for them the property which he claims has been lawfully put in trust for them.

Before discussing the weight of evidence there is one further point that perhaps should be considered. It is claimed that the plaintiff had against her at the time of the commencement of the action certain claims of creditors, and that this transfer would be void as to those creditors, and it was strenuously claimed upon the argument before this court that at the instance of these creditors the trust deed could be entirely swept away. I do not so understand the law. To whatever

extent this trust deed may be void as to creditors, it could not in any event be assailed except to the extent of the plaintiff's debts. Beyond that the trust would stand as a valid trust.

In examining the evidence I have been impressed with the intelligence and the keen perception shown by the plaintiff in her answers to the · questioning of the attorneys. The distinctions made by her in those answers show a rather unusual mental discrimination and intelligent appreciation of the information sought to be elicited. But this intelligence, as indicated by her examination, bears not a little upon the question of fact that is here for consideration, whether, eleven or twelve years before, when she had executed this trust deed, she understood what she was doing and understood the nature of the trust that she was creating. She swears that the deed was presented to her with a suggestion that it would be well to put the property in trust for three years in order that she might find out just what she wanted to do with it, and that at the end of three years she had the power of revocation of the trust to withdraw the property entirely to herself. This was when she was about to be married. The property thus to be held in trust was confessedly about one-half of her property, as was supposed at that time. The question occurs if it· were simply for the purpose of giving her three years to consider what was best to be done, why still more of her property was not put in that trust deed, and the further question, why she should cripple herself by this trust for three years with the power of absolute freedom at her will thereafter. This trust deed was drawn by Wilkinson at his suggestion. Wilkinson was a lawyer in Philadelphia. He was a trust officer of this trust company which was made the temporary trustee. He had been her father's friend. He had been many years associated with a prominent law firm in Philadelphia, and the plaintiff and her mother had often visited at Wilkinson's house, and he had apparently a personal interest in her. He swears that this deed was executed after many consultations in which she was informed that the trust was irrevocable and as she was about to be married that she concluded that it was a wise act to put this property in trust as a protection to herself and to her children thereafter in

case of any financial misfortune befalling her. It was understood that she was to put in trust only about one-half of her property, the balance remaining at her free disposition. It is difficult to see any reason why this testimony of Wilkinson should have been disbelieved. He had no interest in putting this property in trust except an interest in the plaintiff herself and her children thereafter to be born. There is not the slightest reason why Wilkinson should go upon the stand and perjure himself, or why he should have drawn a deed that was irrevocable and represented to her that it was revocable after three years. This case stands very clearly upon an issue between the plaintiff and Wilkinson. The plaintiff has every interest to withdraw this property from the trust that she may spend it as she pleases. In balancing her evidence, therefore, against the evidence of Wilkinson, without any motive to misrepresent to her on the part of Wilkinson, it would seem extremely doubtful whether the plaintiff had borne the burden upon her to satisfy the court that she did not understand the nature of the instrument that she executed.

With this conflict between the evidence of the plaintiff and the evidence of Wilkinson as to the plaintiff's understanding of the provisions of the trust deed, with the apparently disinterestedness of Wilkinson, and the strong personal interest of the plaintiff, there is one significant fact which in my judgment should control the determination of this case. This deed of trust was executed in 1906. In 1915 the plaintiff, having dissipated her other available property, sought to obtain moneys from the trustee for the purpose in part at least of prosecuting her proceeding against her former guardian in the State of Illinois. The United Security Life Insurance and Trust Company refused to loan money upon the trust deed. The Connecticut Trust Company was willing to loan to the plaintiff money upon the security of that deed, and apparently for that reason alone the plaintiff exercised her right reserved in the trust deed of changing her trustee. For the purpose of obtaining this advance of moneys by the Connecticut Trust Company she executed her personal obligations, interest bearing, to the Connecticut Trust Company. The question at once arises, if the plaintiff understood that trust deed was revocable at that time, why she did not demand

its revocation, instead of changing her trustee simply, as provided by the trust deed and issuing her personal interest-bearing obligations for the money that she borrowed. It does not appear that at that time she made claim that she had the right to revoke the trust, and it was only after the Connecticut Trust Company refused to make further advances to her that she made claim that the trust deed was revocable at her pleasure at any time after 1909. If it be claimed that she, believing that she had the right to revoke the trust, desired to preserve the trust, except as to the moneys that she desired to withdraw at that time, why did she not revoke the trust, take out those moneys and execute a new trust deed as to the balance of the property which would remain? The conviction is forced upon us that she had no thought in 1915, when she was making this change for the purpose of raising money, that she believed she had any right to revoke that trust deed. It was only after the Connecticut Trust Company had refused to advance further moneys thereupon that her claim was made that she was misled in the execution of the trust deed, and was told that at all times after three years she had the right to revoke this trust or that she claimed that she had been misled and imposed upon in being induced to sign any irrevocable deed of trust. For over ten years after the execution of the deed this claim was never made, although in the meantime circumstances had arisen which would have led to her attempt to revoke the deed if she had in fact been misled as to its terms. The delay in the assertion of this right for so long a time under the circumstances recited is strong evidence in corroboration of the testimony of Wilkinson that the deed was executed with full knowledge on her part of its provisions and with an intent then existing to protect by an irrevocable trust both herself and her possible children from possible want, in case she should by mischance lose the half of her estate which she reserved for her own control. Irrespective, therefore, of the evidence of Channon, whose evidence fully sustains the defendants' claim, we are of opinion that the preponderance of evidence is strongly and decisively with the defendants in this case.

The judgment herein should, therefore, be reversed, with

costs, and judgment should be rendered in favor of the defendants upon the merits, with costs.

The fourteenth finding of fact is reversed and this court finds that the trust deed to the United Security Life Insurance and Trust Company in 1906 was executed by the plaintiff with full knowledge on her part that the trust therein created was irrevocable and with full understanding of its force and effect. Judgment is ordered in accordance with this conclusion, with costs.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and judgment rendered in favor of defendants upon the merits, with costs. Settle order on notice.