763 P.2d 369

**Evelyn F. (Segura) RUYBALID,
Petitioner–Appellee,**

v.

**David G. SEGURA,
Respondent–Appellant,**

**and**

**Adela Segura, Intervenor–Appellant.**

**No. 8357.**

Court of Appeals of New Mexico.

Sept. 29, 1988.

David R. Sierra, Santa Fe, for petitioner-appellee.

Eileen R. Mandel, Caldwell, Lenssen, Mandel and Jesmer, Santa Fe, for respondent-appellant.

Morton S. Simon, The Law Offices of Morton S. Simon, Santa Fe, for intervenor-appellant.

## OPINION

ALARID, Judge.

This appeal arises out of the divorce of Petitioner–Appellee, Evelyn (Segura) Ruybalid (Evelyn), from Respondent–Appellant, David Segura (David), which was granted in June 1982. The issues on appeal arise from the post–1984 judgment collection efforts of Evelyn against a piece of real property which the trial court found to be David's separate property. He received that property in 1977, by gift from his parents, prior to marriage. David's mother, Adela Segura (Adela) (Intervenor–Appellant), attempted to reform the deed granting the property to David, and attempted to intervene in the original divorce proceedings in order to accomplish that

end. David declared bankruptcy in 1984, which precluded the enforcement of Evelyn's judgment against the property.

The original divorce decree and property judgment were affirmed on appeal to the supreme court and their validity is not at issue in the present appeal. David challenges the money judgment in Evelyn's favor on nine grounds. Adela challenges the trial court's denial of her motion to intervene. We consolidate into the following three issues:

1. Whether the trial court abused its discretion when it denied Adela Segura's motion to intervene.

2. Whether the trial court erred when it allowed Adela and David, at their own option, to reform the 1977 deed, but ruled that such reformation would have no effect upon Evelyn's position as a judgment lien-holder.

3. Whether the trial court erred when it denied David's claim for a homestead exemption in the property located at 910 Dunlap Street in Santa Fe, New Mexico.

We affirm on issues one and two, and reverse and remand on issue three.

FACTS

Given the protracted nature of this case, we find it necessary to provide a brief summary of the factual setting. The parties were married in May 1977. In April 1977, David's parents, Bernabe and Adela Segura, made a gift to David of the property at 910 Dunlap Street in Santa Fe by warranty deed. David did not record the deed at the county clerk's office. The parties resided at the same address until their marriage deteriorated in mid–1980. The property as described in the granting deed consisted of a main house and duplex to the rear of the house, located at 910–½ Dunlap Street.

In July 1980, Evelyn filed a petition for dissolution of marriage. During the same month, her attorney filed the 1977 deed of public record with the Clerk of Santa Fe County. In August 1980, David attempted to reconvey the property to his parents. In the divorce proceeding, the trial court found the attempted conveyance to be void and fraudulent, and this ruling was subsequently upheld by the supreme court. The trial court also determined the Dunlap Street property to be David's separate property.

In June 1982, the trial court entered its judgment and decree of divorce, setting forth the final distribution of marital property which reflected a money judgment in favor of Evelyn in the amount of $47,-145.50. In addition, the judgment specifically imposed a lien upon David's separate property as it was described in the 1977 deed. David appealed this judgment to the supreme court. Since David posted no supersedeas bond, Evelyn filed a complaint in foreclosure, seeking to enforce her judgment lien upon the real estate. David then filed his first claim for a homestead exemption. In a July 1983 decision, the supreme court remanded the case to the trial court with instructions to incorporate the negative valuation of a piece of community property.

In January 1984, the trial court, pursuant to the supreme court's instructions and after a rehearing, adjusted the judgment for Evelyn from $47,145.50 to $55,146.50, plus attorney fees and costs. In addition, the trial court issued a writ of execution against the duplex at 910–½ Dunlap Street. Evelyn also filed several writs of garnishment after the adjusted judgment, in attempts to satisfy her judgment.

Soon after the entry of the adjusted judgment in March 1984, David filed a voluntary petition of bankruptcy under chapter seven of the Federal Bankruptcy Code in the Federal Bankruptcy Court for the District of New Mexico. The petition listed the Dunlap Street property, as described in the 1977 deed, as part of the bankrupt estate, and it also included a second claim for a homestead exemption. During the same month, Evelyn obtained an order from the trial court allowing the sale of David's separate property, but the Clerk of the Bankruptcy Court filed a notice of stay of any court proceedings to enforce a lien against any property in the custody of the Bankruptcy Court. In July 1984, David filed a third claim for a homestead exemp-

tion. In all three filings, the property described for the claim of homestead exemption was identical to the property described in the 1977 deed. In September 1984, David filed an amended claim of exemptions specifically stating that he was supporting his two children from a previous marriage, and that he was therefore entitled to hold exempt a homestead in the amount of $20,000, pursuant to NMSA 1978, Section 42-10-9 (Cum.Supp.1984).

In August 1984, despite the notice of stay, Evelyn further attempted to enforce her judgment and complaint in foreclosure by publishing, in the Santa Fe New Mexican, a notice of intent to sell at auction the Dunlap Street property. At this point, David and his mother, Adela, requested reformation of the deed by the trial court claiming that the description in the 1977 deed mistakenly included the duplex and the main house. Adela and her daughter, Lori, then filed a motion to intervene and a complaint in intervention asking the trial court to reform the deed to reflect the actual intention of the parties—to transfer only the duplex at 910-½ Dunlap Street to David.

The trial court ruled that Adela and David could reform the deed as requested without the court's intervention or assistance. The court further ruled, however, that any reformation would be subject to Evelyn's prior judgment lien and to the rights of the trustee in bankruptcy. The court also ruled that David was not entitled to a homestead exemption, concluding that David did not have legal custody of his children. Alternatively, the trial court concluded that if David was entitled to an exemption at all, it would be for the tract he claimed to own at 910-½ Dunlap Street. Additionally, the trial court denied, in its conclusions of law, Adela's and Lori's motion to intervene in the action.

David, Adela and the trustee in bankruptcy filed their notice of appeal on a timely basis in February 1985. After the filing of that notice of appeal, all claims of the trustee in bankruptcy were settled by stipulation, whereby Evelyn and the trustee agreed they would release and discharge each other from any and all claims arising out of the original divorce action. Evelyn also waived any right to make any claim as a secured or unsecured creditor against the bankrupt estate of David.

DISCUSSION

*Issue 1*

■ We first consider whether the trial court abused its discretion when it denied Adela's motion to intervene and her claim for relief. The denial of a motion to intervene will not be reversed absent a clear abuse of discretion by the trial court. *See Richins v. Mayfield,* 85 N.M. 578, 514 P.2d 854 (1973). We believe that the trial court essentially allowed Adela to intervene, since it heard her claims and allowed her to fully develop her case before the court. Although the trial court ultimately denied her proposed conclusion of law that her motion to intervene be granted, Adela did obtain a full hearing of her claims. The court concluded that her claim for reformation of the 1977 deed was allowed, as long as it did not effect the rights of Evelyn.

■ Intervention is an act or proceeding whereby a person is permitted to become a party in an action between other persons, after which the litigation proceeds with the original and intervening parties. *State v. Reese,* 78 N.M. 241, 430 P.2d 399 (1967). SCRA 1986, 1-024 provides for intervention of right and permissive intervention. Rule 1-024(A)(2) allows intervention of right upon timely application:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 1-024(B)(2) allows permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common."

Adela argues that permissive intervention applies here. She relies upon *Richins v. Mayfield* to argue that intervention will be allowed, even after a final judgment, when it is necessary to preserve a right

which cannot otherwise be protected. She further contends that the trial court found common questions of law and fact between the intervenors and the original parties to the action, but it erroneously rejected Adela's motion to intervene.

■ We do not find Adela's arguments to be persuasive. First, her reliance upon *Richins* is misplaced since there were not the exceptional circumstances of a final judgment here which the intervenors were attempting to re-open in order to intervene. Moreover, although there may well be common issues of law and fact between the intervenors and the original parties, we believe that Adela's interests were adequately represented by David and were heard by the trial court. Hence, Adela's motion to intervene was properly denied under the ambit of Rule 1–024(A)(2) which precludes intervention when "the applicant's interest is adequately represented by existing parties." Furthermore, we find no abuse of discretion by the trial court since Adela was allowed the full opportunity to present her claim to the court.

*Issue 2*

We now consider whether the trial court erred when it allowed Adela and David, at their own option, to reform the 1977 deed, but ruled that such reformation would have no effect upon Evelyn's position as a judgment lienholder. We do not find error here either, and therefore affirm the trial court.

The trial court specifically allowed for the reformation of the deed in its conclusion of law no. 2, as long as such reformation did not adversely affect the rights of either Evelyn, as a judgment lienholder, or of the trustee in bankruptcy. In addition the trial court limited the scope of reformation of the deed by accepting Evelyn's defenses of the statute of limitations, collateral estoppel, laches, and the legal priority of a judgment lienholder.

David primarily argues in his brief that the court erred in not granting the full reformation of the deed since there was a mutual mistake of intent between Adela and himself. He argues that a court in New Mexico can only grant reformation upon the finding of a mutual mistake of the parties to an instrument when that instrument does not actually reflect their agreement. David relies upon numerous cases including *Butler v. Butler,* 80 N.M. 36, 450 P.2d 922 (1969); *Smith v. Loos,* 78 N.M. 339, 431 P.2d 72 (1967); *Leigh v. Hertzmark,* 77 N.M. 789, 427 P.2d 668 (1967); and *Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App.1970). We are not convinced by his arguments in reliance on these cases.

In *Wright,* an action for the reformation of a deed for the sale of real estate, this court stated that a deed may be reformed if (1) there has been a mutual mistake, or (2) a mistake by one party accompanied by fraud or other inequitable conduct by the other party. 81 N.M. at 411, 467 P.2d at 737. *See also Butler,* 80 N.M. at 38, 450 P.2d at 924 (equity will grant reformation of written instruments only where there was a mutual mistake, or a unilateral mistake together with fraud or inequitable conduct by the other party). Furthermore, in *Smith,* an action to set aside the settlement of a personal injury claim, this court held that the settlement agreement could not be set aside because the agreement accomplished the intent of the parties—an end to any further contention between the litigants. We do not find any of the foregoing cases applicable to the present facts.

■ In the instant case, the issue of fraud or inequitable conduct was neither raised below nor in the docketing statement and, therefore, it is not an issue on appeal. *State v. Najar,* 94 N.M. 193, 608 P.2d 169 (Ct.App.1980). In spite of David's argument that Adela was mistaken in the amount of property she and her husband intended to grant to David, the trial court did not find any mistake. In the absence of such finding, it is well established that the deed must be accepted as written. *See Leigh v. Hertzmark,* 77 N.M. at 792, 427 P.2d at 671. Moreover, in addition to the lack of a finding of mutual mistake of fact, David did not show that Adela made a unilateral mistake, which may have supported reformation where the conveyance

is by gift. *Butler*, 80 N.M. at 38, 450 P.2d at 924.

Even though the trial court did not find mutual mistake of fact, David contends that since the trial court allowed the parties, at their own option, to reform the 1977 deed, it also implicitly found that there was a mutual mistake. He argues this point despite the trial court's rejection of both his and Adela's proposed findings pertaining to intent and mistake of fact. It is well established that the failure of a trial court to make a specific finding of fact is regarded as a finding against the party having the burden of establishing that fact. *Gibbons & Reed Co. v. Bureau of Revenue*, 80 N.M. 462, 457 P.2d 710 (1969); *Brundage v. K.L. House Constr. Co.*, 74 N.M. 613, 396 P.2d 731 (1964). Therefore, in the absence of mistake, the trial court properly denied David's and Adela's request for the judicial reformation of the 1977 deed.

■ The court did, however, allow David and Adela, at their own option, to reform the deed, so long as such reformation would not interfere with Evelyn's position as a judgment lienholder. We believe that any reformation of the deed should not affect Evelyn since, as a judgment lienholder, she essentially has the legal position of a bonafide purchaser for value without notice of any claims or encumbrances.

The supreme court has held that reformation will not affect the rights of a bonafide purchaser or any encumbrancer of land without notice or knowledge of the claimed mistake in the title, *Kimberly, Inc. v. Hays*, 88 N.M. 140, 537 P.2d 1402 (1975); *see* 66 Am.Jur.2d *Reformation of Instruments* § 65 (1973). *See also Pacheco v. Martinez*, 97 N.M. 37, 636 P.2d 308 (Ct. App.1981) (reformation is not proper relief as against a subsequent bonafide purchaser or encumbrancer of land, or where such relief is not properly pleaded and proven). In the present case, there is no evidence to prove that judicial reformation should be granted to the appellants. More importantly, Evelyn, as a judgment lienholder, is an encumbrancer of land, *see* Black's Law Dictionary 473 (5th ed. 1979), and the record shows that she was without notice of the claimed mistake in the title until she attempted to execute her judgment against David's property. The trial court found that all parties were proceeding under the assumption that the 1977 deed was valid, and that it included both the duplex and the main house located at 910 Dunlap Street.

■ Given the fact that Evelyn is a judgment lienholder without notice of the claimed mistake, she is also supported by NMSA 1978, Section 14-9-3 (Repl.Pamp. 1988), which provides:

> No deed, mortgage or other instrument in writing, not recorded in accordance with Section 14-9-1 NMSA 1978, shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith or *judgment lien creditor*, without knowledge of the existence of such unrecorded instruments. (Emphasis added.)

A judgment lien creditor is synonymous with a judgment lienholder. This section precludes David and Adela from reforming the 1977 deed in a manner that would restrict Evelyn's efforts to execute her judgment against the property at issue here. Furthermore, in light of Section 14-9-3, Adela and David incorrectly argue in their brief that Evelyn, in order to prevail, must stand as a "bonafide purchaser or encumbrancer for value." The evidence clearly shows Evelyn to be a judgment lien creditor and therefore protected by the statute. She may also be considered to be an encumbrancer for value since she has an outstanding money judgment against David's property.

Consequently, since the record shows Evelyn to be a judgment lienholder, and because there is no evidence that she had any notice of the claimed mistake in the 1977 deed until she attempted to execute her judgment, the trial court was correct in ruling that any reformation of the deed is not effective against the rights of Evelyn. The trial court is accordingly affirmed on this issue.

*Issue 3*

We now consider whether the trial court erred when it denied David's claims for a

homestead exemption in his property located at 910 Dunlap Street. We believe that the trial court erred in its interpretation of the homestead statute, and we therefore reverse and remand on this issue. Section 42–10–9 [1] provides for the homestead exemption:

A married person, widow, widower or person who is supporting another person shall have exempt a homestead in a dwelling house and land occupied by him although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption. Such a person has a homestead of twenty thousand dollars ($20,000) exempt from attachment, execution or foreclosure by a judgment creditor, and from any proceeding of receivers or trustees in insolvency proceedings, and from executors or administrators in probate.

The trial court adopted Evelyn's arguments against the homestead exemption and, in its conclusions of law, denied David's entitlement to the exemption. The court concluded that David is not entitled to the exemption for three reasons: (1) none of his children live with him; (2) he is not the sole supporter of his two children; and, (3) he did not have legal custody of his children. Thus, the trial court concluded that, as a matter of law, David is not supporting his children according to the conditions the court considered. We believe the trial court erred in so concluding, and conclusions of law are reviewable on appeal. *Edens v. New Mexico Health & Social Serv's Dep't*, 89 N.M. 60, 547 P.2d 65 (1976).

■ The purpose of a homestead exemption, and of exemptions in general, is to benefit the debtor and the debtor's dependents. *In re Niemyjski*, 26 B.R. 466 (Bankr. D.N.M.1983). Moreover, exemption statutes in New Mexico should be liberally construed. *Laughlin v. Lumbert*, 68 N.M. 351, 362 P.2d 507 (1961). We believe that the trial court misconstrued the language of the statute.

■ The statute is clear and unambiguous. Under the rules of statutory construction, legislative intent is determined primarily by the language of the statute itself; words are given their ordinary meaning unless a different intent is clearly indicated. *State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984). Further, courts must take the statute as they find it and construe it according to the plain meaning of the language employed. *Perea v. Baca*, 94 N.M. 624, 614 P.2d 541 (1980). Nowhere in Section 42–10–9 does it require the claimant of a homestead exemption to have legal custody of his children, to be their sole supporter, or to have his children reside with him. The trial court, however, concluded that David was not entitled to the exemption for failing to satisfy those conditions. The statute requires only that the claimant be "supporting" another person. In effect, the trial court imposed additional requirements upon the application for a homestead exemption. If the legislature had intended there to be additional requirements, it would have included them in the homestead provision. Hence, we conclude the trial court erred in its interpretation of Section 42–10–9.

Still at issue, however, is whether David is "supporting another person" as required by the statute. It is undisputed that he is the owner of at least the duplex at 910–½ Dunlap Street, and that he was under a court order to furnish support for his two minor children at the time of the original action. It is also undisputed that he had contributed approximately $3,500 in child support from September 1983 through October 1984. The question remains though, whether David is truly supporting his two children pursuant to the statute. The statute does not define the term "support," nor do current New Mexico cases indicate the extent of financial contribution that one parent must make in order to be supporting a child. Consequently, we reverse and remand on this issue for the trial court to determine whether David is in fact support-

---

**1.** We consider the 1984 version of the statute in effect at the time of this appeal.

ing his children pursuant to the meaning of Section 42–10–9.

CONCLUSION

Based upon the foregoing discussion, we affirm the trial court on the first two issues. We reverse and remand on the third issue with instructions for the trial court to determine whether David Segura is entitled to a homestead exemption on the basis of his contributions to the support of his children. No attorney fees are granted to appellee.

FRUMAN and APODACA, JJ., concur.